IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CENTELL COLONZO MCNEIL,

    Plaintiff,

v.                                                                    Civil Action No. 3:15cv751

BIAGGI PRODUCTIONS, LLC,

and

JUAN A. DAVILA,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Biaggi Productions, LLC, and Juan A. Davila's (collectively, the "Defendants") "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)[1] for Lack of Personal Jurisdiction" (the "Third Motion to Dismiss"). (ECF No. 29.) Plaintiff Centell Colonzo McNeil has responded to the Third Motion to Dismiss, (ECF No. 31), and the Defendants have replied, (ECF No. 32). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[2] For the reasons that follow, the Court will grant in part the Third Motion to Dismiss. The Court will dismiss all but Count V without prejudice.

---

[1] "[A] party may assert the following defenses by motion: . . . lack of personal jurisdiction . . . ." Fed. R. Civ. P. 12(b)(2).

[2] 28 U.S.C. § 1332 confers subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

## I. Procedural and Factual Background

### A. Procedural Background

The parties' alacrity to oppose the other, coupled with a reluctance to assure compliance with the Federal Rules of Civil Procedure, has hindered the prosecution of this case. After removing this case to federal court, the Defendants filed a "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction" (the "First Motion to Dismiss"). (ECF No. 2.) Before opposing the First Motion to Dismiss, McNeil filed the "First Amended Complaint."[3] (ECF No. 4.) Because McNeil filed the First Amended Complaint within 21 days after the Defendants filed the First Motion to Dismiss, the Court ruled that Federal Rule of Civil Procedure 15(a)(1)(B)[4] permitted McNeil to file the First Amended Complaint as a matter of course. *See McNeil v. Biaggi Prods., LLC*, No. 3:15cv751, 2016 WL 3227517, at *1 (E.D. Va. Feb. 9, 2016).

Prior to that ruling, however, and in spite of his right to file the First Amended Complaint as a matter of course, McNeil filed an opposition to the First Motion to Dismiss. (ECF No. 5.)

---

[3] The First Amended Complaint alleges seven counts of defamation, five counts of negligent defamation, and one count of unauthorized use of name and picture in trade. (First Am. Compl. ¶¶ 119–85.) McNeil seeks $2,000,000 in compensatory damages, $12,000,000 in exemplary and punitive damages, and costs and pre and postjudgment interest. (*Id.* at 24.)

[4] Federal Rule of Civil Procedure 15(a)(1)(B) provides:

**(a) Amendments Before Trial.**

> **(1) *Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course within:
>
> . . . .
>
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1)(B).

The Defendants then filed a Motion to Strike McNeil's opposition as untimely, (ECF No. 6), and McNeil sought an extension of time, (ECF No 8). The parties proceeded to respond to each other's motions unnecessarily, and the Court ultimately denied all motions then pending as moot. *McNeil*, 2016 WL 3227517, at *1. In order to give the parties what the Court intended to amount to a fresh start, the Court deemed the Amended Complaint filed as of the date of its order. *Id.* ("The Court DEEMS FILED the Amended Complaint as of today . . . .")

Despite the Court's attempt to functionally reset the litigation, the parties again cluttered the docket with several filings. Twenty-one days after the Court deemed the First Amended Complaint filed, the Defendants filed, untimely, the Second Motion to Dismiss.[5] (ECF No. 15.) McNeil subsequently filed the Motion for Entry of Default and the Motion to Strike, arguing that the Defendants did not timely file their responsive pleading to the Amended Complaint. (ECF Nos. 17, 18.) The Defendants then filed the Motion for Leave to File, seeking an extension of time to file their responsive pleading if the Court deemed the March 1 filing untimely. (ECF No. 23.)

The Court found that the Defendants demonstrated excusable neglect for extending the time to file responsive pleadings and granted the Motion for Leave to File. (ECF No. 28.) The Court denied as moot the Second Motion to Dismiss, the Motion for Entry of Default, and, the Motion to Strike.[6] The Defendants then filed the Third Motion to Dismiss, which the Court now

---

[5] The Defendants did not have 21 days to file a response to the First Amended Complaint. Under Federal Rule of Civil Procedure 15(a)(3), the Defendants had 14 days.

[6] The Court also admonished the parties that, going forward, they must adhere to all applicable rules, including the Federal Rules of Civil Procedure, the Local Civil Rules for the United States District Court for the Eastern District of Virginia, and any orders of this Court. The Court explained that any failure to adhere to the rules or orders governing the parties' conduct could result in the imposition of sanctions.

3

considers. The Third Motion to Dismiss seeks to dismiss the First Amended Complaint and argues that the Court lacks personal jurisdiction over the Defendants.

### B. Factual Background[7]

This case arises out of purported Internet communications and third-party conversations by the Defendants[8] between December 2014 and November 2015. McNeil alleges that, in December 2014, he sent a message to Davila via his cellular phone under the belief that the phone number belonged to someone else. Various communications ensued. McNeil asserts that the Defendants then defamed him by publishing various posts or comments online. These actions involved two "Tweets,"[9] two Facebook comments,[10] and a blog post.[11] McNeil also

---

[7] McNeil bears the burden of proving grounds for personal jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Where, as here, neither party has sought an evidentiary hearing (which requires a showing of personal jurisdiction by a preponderance of the evidence), the Court determines only whether McNeil has made a prima facie showing of personal jurisdiction. *Id.* In evaluating whether a plaintiff has made a prima facie demonstration of personal jurisdiction, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007). This Court construes the allegations in the First Amended Complaint in accordance with these principles.

[8] McNeil alleges that Davila "is a resident of Fort Lauderdale, Florida," who "is also known as Juan Melecio, Juan Melecio Davila, John Melecio Davila, John Melecio, Antonio Biaggi, and Antonio Biaggi Davila." (First Am. Compl. ¶ 3.) McNeil alleges that Davila owns Biaggi Productions, LLC, a "limited liability corporation domiciled in Fort Lauderdale, Florida," that "produces and distributes homosexual pornographic content on the website www.biagiivideos.com." (*Id.* ¶¶ 2–3.)

[9] Registered users of the social media website "Twitter" may publish Tweets—or posts limited to 140 characters. Biaggi Productions, LLC operates a Twitter account under the name Antonio Biaggi xxx and the handle @Xxxbiaggi.

[10] Biaggi Productions, LLC operates a Facebook account under the name Antonio Biaggi Davila, and Davila operates a personal Facebook account under the name John Melecio Davila.

[11] The Defendants own and operate a blog at http://antoniobiagixxx.blogspot.com.

4

contends that the Defendants published statements to the Richmond Police Department and the Federal Bureau of Investigation that accused McNeil of threatening to kill Davila.

The Defendants published the allegedly defamatory statements after McNeil accidentally called Davila using the FaceTime feature. McNeil attempted to apologize to Davila, including during the FaceTime call and via text message and telephone call. Davila made several phone calls to McNeil from a blocked phone number, and McNeil later received racist and derogatory emails from an unknown account that he believed to have been operated by Davila. The owner of the email account, Joshua Boyle, contacted McNeil and apologized for the emails. Boyle explained that he and Davila had been friends and that Davila hacked his email account.

Davila posted the first Tweet on December 29, 2014, at 8:46 a.m. (*Id.* ¶ 45.) That Tweet stated: "Este cabron de Hopewell, Virginia me llama FaceTime que m va a matar . La policia Esta en my casa mas info luego,"[12] and included a photo of McNeil's upper body and face, as well as his personal email address. (*Id.* ¶¶ 46, 49.) The 8:46 a.m. Tweet generated twenty reply Tweets and five Retweets[13] from other Twitter users. (*Id.* ¶ 53.) One reply asked in Spanish about the veracity of Davila's Tweet, to which Davila responded affirmatively at 11:31 a.m.

The Defendants posted the following comment on Biaggi Productions, LLC's Facebook account on December 29, 2014, at 3:55 p.m.:

> Jason Ander from NY and Centell Mcneil (sic) police from Virginia , (sic) he should be a shame (sic) of him self (sic) for doing this sh[**], (sic) where the people involved in thisnUgly and F Stupid (sic) move to FaceTime me I don't how (sic) they got my info. but (sic) this morning they FaceTime more than 25

---

[12] McNeil alleges that Davila's Tweet translates to: "this [b******] [m*****f*****] [similar derogatory term] from Hopewell Virginia FaceTime calls me that he is going to kill me. The police are in my house more info later." (First Am. Compl. ¶ 47 (alterations in original).)

[13] A user "Retweets" a Tweet when he or she elects to publish the original Tweet in full on his or her Twitter profile. A Retweet shows the original Tweet in full, including attribution to the person who initially published the Tweet.

times to show me guns on Camera , (sic) the police already has a (sic) investigation...

(*Id.* ¶ 57 (alterations in original).) The Facebook post included the same photo and email address as the first Tweet. The Facebook post generated 18 comments from other Facebook users. Davila then posted the following statement to his Facebook timeline at an unspecified time on December 29, 2014:

> This person call (sic) me saying he is going to kill me, if you guys get FaceTime call (sic) from this person report him . it (sic) comes in my computer not in (sic) my phone . there (sic) no way to Block him for some reason , ctell.cm105@gmail.com The Police just left my house I call (sic) the police in Virginia, he lives here 3919 Grovewood Rd Hopewell, Virginia and his number its (sic) 804 7283919

(*Id.* ¶ 66 (alterations in original).) On or about that same day, the Defendants "published statements to the Richmond Police Department and to the Federal Bureau of Investigation (FBI) that, in *haec verba*, [McNeil] threatened to kill Defendant Davila." (*Id.* ¶ 92.)

On January 2, 2015, Davila made the following statement on a blogpost titled "Dead threats from a Police of Richmond, Virginia":

> Centell Mc Neil Police from Richmond Virginia you and your dead treats will not stop me from working and doing my thing you , I hope your soul if you have its Forgiving by god . But now you have to respond to the IA, yes like you can see the IA that are investigating you right now .

(*Id.* ¶¶ 75–76 (grammar, spacing, and spelling errors in original).) The blogpost included the same photo and email address featured on the Tweet and Facebook post and also displayed a second photo of McNeil's face and shoulders.

Finally, on November 22, 2015, the Defendants published the following Tweet on Twitter: "Last year a Police from Richmond Virginia harassed me and hack (sic) into my computer for an entire month." (*Id.* ¶ 100 (alteration in original).) The November 22 Tweet generated seven comments, five of which came from the Defendants.

As a result of the Defendants' conduct, McNeil alleges to have suffered injury to his personal reputation and his professional reputation. McNeil asserts that his employer placed him on administrative leave and stripped him of overtime pay. McNeill contends that he "has suffered and will suffer physical, mental, economic, and emotional injuries." (*Id.* ¶ 118.)

The First Amended Complaint brings the following counts:

"COUNT 1 – Defamation – The December 29, 2014 Twitter Post" ("Count I")

"COUNT 2 – Defamation – The Facebook Post" ("Count II")

"COUNT 3 – Defamation – The [Facebook] Timeline Post" ("Count III")

"COUNT 4 – Defamation – The Blog Post" ("Count IV")

"COUNT 5 – Defamation – Statements to Richmond Police Department" ("Count V")

"COUNT 6 – Defamation – Statements to the FBI" ("Count VI")

"COUNT 7 – Defamation – The November 22, 2015 Twitter Post" ("Count VII")

"COUNT 8 – Negligent Defamation – The December 29, 2014 Twitter Post" ("Count VIII")

"COUNT 9 – Negligent Defamation – The Facebook Post" ("Count IX(A)")[14]

"COUNT 9 – Negligent Defamation – The [Facebook] Timeline Post" ("Count IX(B)")

"COUNT 10 – Negligent Defamation – The Blog Post" ("Count X")

"COUNT 11 – Negligent Defamation – The November 22, 2015 Twitter Post" ("Count XI")

"COUNT 12 – Unauthorized Use of Name and Picture in Trade" ("Count XII")

---

[14] McNeil alleges "COUNT 9" twice. Rather than renumber all counts, the Court will refer to them as Count IX(A) and Count IX(B).

## II. Analysis: Third Motion to Dismiss

The Defendants seek to dismiss the First Amended Complaint for lack of personal jurisdiction. The Defendants contend that the Court cannot assert personal jurisdiction over them because their contacts with Virginia do not satisfy the requirements of the Due Process Clause.[15] In large part, the Court agrees. The Defendants' contacts with Virginia do not support a finding of personal jurisdiction on twelve of McNeil's thirteen causes of action.[16] For the reasons that follow, the Court will grant the Third Motion to Dismiss in part. The Court will dismiss Counts I, II, III, IV, VI, VII, VIII, IX(A), IX(B), X, XI, and XII without prejudice. The Court will order briefing on how this case should proceed with only Count V remaining.

### A. The Court Will Grant the Third Motion to Dismiss in Part

The Court will grant the Third Motion to Dismiss in part because McNeil cannot make a prima facie showing of personal jurisdiction on twelve of thirteen claims. McNeil alleges that this Court has personal jurisdiction over the Defendants because, by disseminating purportedly defamatory statements online and communicating directly with third parties, the Defendants purposefully availed themselves of activities in Virginia. The Court finds that such contacts,

---

[15] Much of the parties' briefing addresses whether the Defendants' contacts satisfy Virginia's long-arm statute. Va. Code § 8.01-328.1. As the Court explains below, "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). Because the Due Process Clause necessarily enforces the limits of Virginia's long-arm statute, none of the Defendants' arguments that pertain to Virginia's long-arm statute alter the findings of this Memorandum Opinion. The Court will directly address the constitutional component of the personal jurisdiction analysis.

[16] The Defendants take issue with McNeil's attempt to assess their jurisdictional contacts together. Without citation, the Defendants state that "[j]urisdictional analysis requires a review for each defendant independently." (Defs.' Reply 2, ECF No. 32.) The First Amended Complaint, however, alleges that Davila, as owner, acted on behalf of Biaggi Productions. Moreover, most allegations concern actions taken by "the Defendants." Accordingly, where appropriate, the Court will group the Defendants when evaluating their contacts with the forum state.

8

even construed in the light most favorable to McNeil, suffice to establish specific personal jurisdiction over only one of McNeil's thirteen claims.[17]

### 1. McNeil Bears the Burden of Proving Personal Jurisdiction

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc.*, 334 F.3d at 396. When a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Id.*; *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). "The [C]ourt, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks*, 242 F. App'x at 890. "If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." *Id.*

### 2. Personal Jurisdiction Standard

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005).

---

[17] McNeil does not argue that the Defendants are susceptible to general jurisdiction in Virginia. *See infra* p. 11 n.18. Accordingly, the Court will not address that jurisdictional basis.

Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)) (internal citation omitted). Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as not to offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc.*, 334 F.3d at 397. "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. . . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d

707, 712 (4th Cir. 2002) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8–9 (1984)). McNeil asserts only specific personal jurisdiction.[18]

The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists. *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2. The Court must consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712 (alteration in original) (internal citations omitted).

With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2. The Court, however, may consider whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business transactions; and, whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted). "If, and only if

---

[18] Appropriately, McNeil does not seek to establish general personal jurisdiction. General jurisdiction exists only when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] *essentially at home* in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added).

11

... the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction ... requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278–79 (citing *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, the court may consider: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies. *Id.* (citing *Burger King*, 471 U.S. at 477).

### 3. McNeil Cannot Establish Specific Jurisdiction for Twelve of Thirteen Counts

McNeil's First Amended Complaint asserts thirteen counts. Ten of those counts[19] allege defamation arising out of the Defendants' social media activity, one count alleges defamation arising out of statements made to the FBI,[20] one count claims defamation arising out of statements made to the Richmond Police Department,[21] and one count avers unauthorized use of name and picture in trade.[22] McNeil generally contends that the Court has personal jurisdiction

---

[19] Counts I, II, III, IV, VII, VIII, IX(A), IX(B), X, and XI.

[20] Count VI.

[21] Count V.
[22] Count XII.

over the Defendants because the Defendants' conduct caused McNeil tortious injury *in* Virginia. McNeil invokes this theory of jurisdiction under the so-called "effects" test, which gives the Court personal jurisdiction over a defendant if he or she intentionally directed activity in the forum state—here, Virginia—that caused harm to the plaintiff.

The Supreme Court has long held that the purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's "intentional conduct [in the foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]." *Calder v. Jones*, 465 U.S. 783, 791 (1984) ("Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California."). *Calder*, however, does not vest jurisdiction in a state merely because it serves as the locus of the plaintiff's injury. *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").[23] The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum *in a meaningful way*." *Id.* (emphasis added); *see also ESAB Group Inc.*, 126 F.3d at 626 ("Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld."). In the Internet context, the Fourth Circuit has framed the effects test as follows:

---

[23] In *Walden*, the Supreme Court emphasized that the specific-jurisdiction inquiry focuses "on the relationship among the defendant, the forum, and the litigation." 134 S. Ct. at 1121. There, a law enforcement agent, who seized $97,000 in cash after a drug dog alerted on it in Atlanta, Georgia, lacked the "minimum contacts" with Nevada necessary to support the exercise of jurisdiction over him. *Id.* at 1126. Thus, even presuming harm from a delayed return of the money, a Nevada court could not order the law enforcement agent to release the cash even when the owners presented evidence that they were professional gamblers travelling to Las Vegas, Nevada, with a legitimately earned "bank." *Id.* The court held that no part of the law enforcement agent's conduct occurred in Nevada, that he formed no jurisdictionally relevant contacts there, and that the mere injury to a forum resident was not a sufficient connection to the forum. *Id.* at 1121–26 (citations omitted).

13

"a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *ALS Scan, Inc.*, 293 F.3d at 714.

Because McNeil asserts only specific personal jurisdiction, the Court must have jurisdiction over each claim it decides. *See Gatekeeper Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 667–68 (E.D. Va. 2010) ("Although the Fourth Circuit has yet to address this issue, the three courts of appeal that have done so have sensibly concluded that specific jurisdiction requires a claim-specific analysis, as a nonresident defendant lacking continuous and systematic contacts with the forum state could not 'reasonably anticipate being haled into court' on claims unrelated to the defendant's forum state contacts, and thus haling them into court on those unrelated claims would violate their due process rights."). Accordingly, the Court's inquiry proceeds on a claim-by-claim basis. McNeil fails to make a prima facie showing of specific personal jurisdiction as it pertains to twelve of his thirteen counts.

### a. McNeil Cannot Establish Specific Jurisdiction for His Claims Arising Out of Defendants' Online Activity

McNeil cannot satisfy the effects test to establish this Court's jurisdiction over his claims that arise out of the Defendants' online activity.[24] The facts giving rise to eleven of McNeil's thirteen claims[25] involve online posts that were not expressly directed at Virginia, but to an undefined audience of Internet users around the world. While the Defendants featured McNeil as the subject of these posts and even referenced Virginia in some of them, nothing indicates that

---

[24] The following counts arise out of the Defendants' online activity: Counts I, II, III, IV, VII, VIII, IX(A), IX(B), X, XI, and XII. The Court addresses them together.

[25] Counts I, II, III, IV, VII, VIII, IX(A), IX(B), X, XI, and XII.

the Defendants specifically directed the posts at Virginia or to Virginia social media users.[26]

Without more, the Court cannot find purposeful availment on those eleven claims. *See FireClean, LLC v. Tuohy*, No. 1:16cv0294, 2016 WL 3952093, at *7 (E.D. Va. July 21, 2016) ("The mere fact that Tuohy referenced a Virginia company, its product, and its owners without mentioning Virginia does not demonstrate an intent to target Virginia, as even overt references to a State may be jurisdictionally insufficient if the focus of the article is elsewhere."); *see also Young*, 315 F.3d at 263 ("The newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers."). Accordingly, McNeil cannot establish this Court's jurisdiction over Counts I, II, III, IV, VII, VIII, IX(A), IX(B), X, XI, and XII. The Court will dismiss those claims without prejudice.

### b. Although McNeil Can Establish Specific Jurisdiction for Count V, the Court Cannot Extend Its Jurisdictional Reach to McNeil's Other Claims, Including Count VI

In an attempt to distinguish *FireClean* and other cases cited by the Defendants, McNeil points out that "the Defendants deliberately communicated via telephone and email with a third party located in Virginia: the Richmond Virginia Police Department." (Pl.'s Br. Opp'n 8, ECF No. 31.) That contact supports a finding of personal jurisdiction on Count V, which alleges

---

[26] To the extent McNeil alleges that the Defendants made contact with Virginia by visiting McNeil's social media accounts (in Virginia), those contacts do not suffice to establish purposeful contacts. *See Carefirst of Md., Inc.*, 334 F.3d at 393 ("[W]e have characterized as '*de minimis*' the level of contact created by the connection between an out-of-state defendant and a web server located within the forum.").

Moreover, although McNeil alleges that other social media users interacted with the Defendants' posts, McNeil does not contend, in the First Amended Complaint or in briefing, that those users interacted with the posts *from* Virginia. In fact, McNeil does not allege that any Virginia residents viewed the Defendants' statements online.

defamation stemming from those precise communications.[27] It does not, however, provide the Court with a basis to extend its jurisdictional reach to other, unrelated claims. *See Gatekeeper Inc.*, 718 F. Supp. 2d at 668–69 ("[S]pecific jurisdiction is claim-specific and there can be no ancillary or supplemental theory of specific jurisdiction, as application of such a theory would unconstitutionally reach claims that a nonresident defendant would not reasonably expect to result in a court action in the forum state."); *see also ALS Scan, Inc.*, 293 F.3d at 712 (explaining that contacts establishing specific personal jurisdiction must "arise out of" the cause of action). Accordingly, the Defendants' statements to the Richmond Police Department support a finding of personal jurisdiction on Count V.

That said, despite the fact that Count VI alleges that the Defendants published statements to the FBI in a manner similar to the conduct asserted regarding the Richmond Police Department in Count V, McNeil cannot establish specific jurisdiction on Count VI. McNeil does not allege—in the First Amended Complaint or in briefing—how the Defendants published statements to the FBI. Critically, McNeil does not indicate whether such publishing involved meaningful contacts with Virginia. Thus, the allegations about the Defendants' statements to the FBI in Count VI fail to assert contacts sufficient to give this Court jurisdiction over that claim. The Court will dismiss Count VI without prejudice.

---

[27] Indeed, a defamation claim involving statements made by the Defendants directly to a Virginia police department demonstrates a "manifested intent of engaging in . . . interactions within the State." *ALS Scan, Inc.*, 293 F.3d at 714.

16

### III. Conclusion

For the foregoing reasons, the Court will grant the Third Motion to Dismiss in part. The Court will dismiss Counts I, II, III, IV, VI, VII, VIII, IX(A), IX(B), X, XI, and XII without prejudice.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 6/16/17